UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELLEN R. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:04 CV 1331 DDN |
| | ) |
| CONTINENTAL CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

This action is before the court on (1) the motion of defendant Continental Casualty Company for summary judgment (Doc. 54), (2) the motion of plaintiff Ellen R. Johnson for summary judgment (Doc. 57), and (3) the motion of defendant Continental Casualty Company to strike plaintiff's summary judgment Exhibits 2, 4, 5, and 6 (Doc. 61). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing was held September 22, 2005.

Plaintiff Johnson commenced this action in the Circuit Court of St. Louis County, Missouri. Plaintiff alleges that defendant wrongly denied her benefits under her Long Term Disability Benefit Plan. Defendant removed the case to this court under 28 U.S.C. § 1441, invoking federal question subject matter jurisdiction. Plaintiff thereafter filed an amended complaint.

The court has subject matter jurisdiction to decide plaintiff's claim under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. See 28 U.S.C. § 1331; 29 U.S.C. § 1132(e).

## I. Background

Plaintiff Johnson alleges that she is disabled on account of Sjogren's Syndrome[1] and Fibromyalgia Syndrome[2] and that she applied for benefits under her Long Term Disability Benefit Plan provided by defendant through her employer Western Union. Plaintiff claims defendant wrongly denied her claim for disability benefits and in doing so abused its discretion under the plan. She also alleges procedural irregularities occurred in the claims process.

While admitting plaintiff was diagnosed with Sjogren's Syndrome and Fibromyalgia Syndrome, defendant denies plaintiff is disabled or entitled to benefits. Defendant denies it abused its discretion when deciding whether plaintiff was entitled to benefits, and denies any procedural irregularities in the claims process.

## II. Defendant's Motion to Strike

Defendant moves to strike Exhibits 2, 4, 5, and 6 filed with plaintiff's motion for summary judgment. Defendant argues that these exhibits were not part of the claim file upon which it based its decision to deny benefits, and that Exhibit 2 and the first page of Exhibit 5 were not provided when requested during discovery in this judicial action.

Additional evidence not relied on by the plan administrator in deciding to provide or deny benefits under an insurance policy "is ruled out on deferential review, and discouraged on de novo review . . . ." Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998). Therefore, unless the court reviews the decision of the plan administrator de novo and plaintiff can show good cause why the additional evidence was not produced earlier, the court will not consider it when reviewing the decision to deny benefits. Id.

---

[1] A disorder which causes the body's immune system to attack its moisture producing glands. Webmd.com at http://my.webmd.com/hw/autoimmune_disease/aa152012.asp (last visited March 30, 2006).

[2] Disorder which causes pain in the muscles and soft tissue. Webmd.com at http://my.webmd.com/hw/fibromyalgia_cfids/hw196368.asp?z=1673_00000_0000_rl_01 (last visited March 30, 2006).

A plan's decision to deny benefits is reviewed de novo, unless the policy language gives the administrator discretion when determining claims to benefits. King v. Hartford Life and Acc. Ins. Co., 414 F.3d 994, 998 (8th Cir. 2005)(en banc); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 587 (8th Cir. 1999); Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 640-41 (8th Cir. 1997). Here, the following language of the policy gives defendant discretion when determining eligibility for benefits:

> When making a benefit determination under the policy, we have discretionary authority to determine *Your* eligibility for benefits and to interpret the terms and provisions of the policy.

(Doc. 56 Ex. B at Pol. 013.)

Even when the policy provides discretionary language, a heightened review is nevertheless proper when the plaintiff shows evidence that "(1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." Woo v. Deluxe Corp., 144 F.3d 1157, 1161 (8th Cir. 1998). This heightened review is not necessarily and strictly de novo as the plaintiff argues, but requires the application of a "sliding scale," one which reduces the court's deference to the administrator's decision as the severity of the procedural irregularity increases. Id. at 1161-62. Procedural irregularities in the claims process include failure to use proper judgment or to thoroughly investigate a claim. Id. at 1161 (failure to obtain an expert to review a claim was a procedural irregularity, when the disease complained of was uncommon). "A claimant must offer evidence that 'gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim' for us to apply the less deferential standard." Heaser v. The Toro Co., 247 F.3d 826, 833 (8th Cir. 2001) (quoting Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998)). "[A]ny procedural irregularity must rise to the level of a serious breach of fiduciary duty before a sliding scale analysis is required." Phillips-Foster v. UNUM Life Ins. Co. of Am., 302 F.3d 785, 796 (8th Cir. 2002). Finally,

the alleged irregularity must have a connection to the decision of the administrator.  Heaser, 247 F.3d at 833.

Plaintiff argues that defendant committed procedural irregularities when it failed to acquire the records of her treating physician Dr. Kurt Piening, failed to request medical records from her employer Western Union, and failed to consider Dr. Pierre Moeser's findings.  She also argues that a claims representative displayed personal animosity towards her.

Concerning defendant's failure to request records from Dr. Piening or Western Union, a plan administrator does not have a duty to develop the record.  Harden v. Am. Express Fin. Corp., 384 F.3d 498, 500 (8th Cir. 2004).  Even though a failure to thoroughly investigate a claim "can result in a serious procedural irregularity requiring a less deferential standard of review," Sahulka v. Lucent Tech., Inc., 206 F.3d 763, 769 (8th Cir. 1999), here any alleged deficiency on defendant's part does not rise to the level of a procedural irregularity.  The record indicates that defendant requested plaintiff's medical records from Western Union (Doc. 56 at ¶ 47) and Dr. Piening's information was considered at the  administrative appeal level ( id. at ¶¶ 105-07).

Regarding Dr. Pierre Moeser's findings, under ERISA a treating physician is afforded no greater deference than that given to any other physician.   Black & Decker Disability Plan v. Nord, 538 U.S. 822, 830 (2003); McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 925 (8th Cir. 2004).  Defendant chose to hold one doctor more credible than another, and doing so was not a procedural irregularity.  In the claim file, the denial letter stated that Dr. Moeser's findings were considered, although not followed.  Finally, the record does not support the assertion that a claims representative had any personal animosity toward plaintiff.

Because no substantial irregularity occurred in the decision-making which led to the denial of benefits, the court will afford the defendant the full measure of deference in applying the abuse of discretion standard.  Any evidence not considered by the defendant when it decided plaintiff's claim will not be considered by the court.

Therefore, defendant's motion to strike is sustained.

### III. Summary Judgment

In its motion for summary judgment, defendant argues that there is no objective medical evidence that plaintiff was disabled or that she could not perform her job functions. In response, plaintiff argues that objective evidence of disability did exist and that doctors had placed restrictions on her. In defendant's reply, it argues that plaintiff did not comply with this court's orders[3] and that plaintiff failed to correctly cite the record as required by E.D. Mo. Local Rule 7-4.01(E). Defendant also argues that there is no objective evidence supporting plaintiff's claim, that plaintiff could perform her job duties despite her diagnoses, and that Dr. Moeser's opinion need not be afforded controlling weight.

### A. General Standard

Summary judgment must be granted, if the pleadings and proffered evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322 (1986); Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir. 2004).

### B. Undisputed Facts

The following facts are without substantial dispute in the record:

1. Plaintiff began working for Western Union as a customer service representative in 1998. Her essential job functions included working 40 hours per week, sitting for up to two hours continuously while working, using a computer, typing 40 words per minute, using a monitor, speaking to customers on the phone, wearing a telephone headset, lifting and moving six pound reams of paper, and adjusting a computer monitor and a chair. (Doc. 56 Ex. A at Clm. 139.)

---

[3]Specifically, defendant alleges that plaintiff failed to pay defendant the sanctions ordered on March 2, 2005 (Doc. 72 at 1), and that plaintiff filed her response to the summary judgment motion late (Doc. 72 at 1-2).

2. Plaintiff became covered by the long term disability policy issued by defendant Continental Casualty Company on January 1, 2002. (Id. at 2.)

3. Her last day of work was August 16, 2002. (Id. at 1, 30.)

4. On April 4, 2003, she applied for long term disability benefits under the policy issued by defendant. (Id. at 1.)

5. The policy defines "disability" thus:

> "*Disability*" means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1. continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and
>
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

(Id. at Pol. 16.)

6. Under the policy, plaintiff was required to submit certain items of information as proof of her disability. These items included

\* \* \*

> 4. Proof that *You* are receiving *Appropriate and Regular Care* for *Your* condition from a *Doctor*, who is someone other than *You* or a member of *Your immediate family*, whose specialty or expertise is the most appropriate for *Your* disabling conditions(s) according to *Generally Accepted Medical Practice.*
>
> 5. Objective medical findings which support *Your Disability.* Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for *Your* disabling condition(s).
>
> 6. The extent of *Your Disability,* including restrictions and limitations which are preventing *You* from performing *Your Regular Occupation.*

(Id. at 24.)

7. The claim file of defendant contains the following:

a. As early as August 27, 2002, diagnoses by Dr. Pierre Moeser, whose specialty is Rheumatology, of Sjogren's Syndrome and Fibromyalgia, and increased total body pain, were reported to plaintiff's employer Western Union. (Doc. 48, Attachment at Clm. 126, 172.) These diagnoses and report of pain were repeated on September 24 and October 22, 2002. (Id. at Clm. 116, 122.)

b. On November 20, 2002, Dr. Moeser stated she should "RTW [return to work] 1/03." (Id. at Clm. 115.)

c. On December 19, 2002, plaintiff was diagnosed with Sjogren's Syndrome and Fibromyalgia Syndrome. Dr. Moeser recorded that plaintiff should consider part-time work. A similar report was made on January 23, 2003. (Id. at Clm. 106, 111.)

d. On February 20, 2003, Dr. Moeser stated in his progress notes that plaintiff was still having cognitive problems of short-term memory loss, sentences not making sense, as well as much fatigue and muscle pain. She has blurry vision and shakiness. His impression was that her fibromyalgia was slightly worse, sicca[4] symptoms indicated Sjogren's syndrome, and that prior x-rays suggested hand joint inflammation. (Id. at 103.)

d. On April 7, 2003, Vicky Dillingham, defendant's Disability Specialist, interviewed plaintiff by telephone and asked her about her condition. Ms. Dillingham reported, among other things, that plaintiff stated she had Sjogren's Syndrome and that she had dry eyes and no saliva. She claimed she might have a thyroid problem, and described her symptoms as being weak and having achy hands, feet, hips and shoulders. She claimed it hurt to type for more than ten minutes, but that she could type for 20 to 30 minutes, and that she slept much of the day. She also claimed she was able to bathe, dress, and groom herself, but had difficulty lifting her arms above her head without pain or sitting for long periods. Plaintiff said that by the middle of the day she becomes dizzy and her eyes lose their focus. (Id. at Clm. 165.)

---

[4]A disorder involving dryness of the mucous membranes, including the eyes and mouth, in the absence of connective tissue disease. The Free Dictionary at http://medical-dictionary.thefreedictionary.com/sicca+ complex.

e. On April 8, 2003, Dr. Moeser stated that plaintiff had "severe fibromyalgia," that her memory loss and speaking ability had gotten worse, and that her attempts to go back to work were often followed by an increase in pain. (Id. at Clm. 102.)

f. On April 8, 2003, plaintiff signed and provided her "LTD Employee's Statement" to defendant on a form provided by defendant. On the form and in an attachment to it she identified her physicians and how her conditions prevented her from working. She specifically described the effects on her cognitive ability, hands, feet, lower back, and fatigue. (Id. at Clm. 143-46.) Her last day of work was in August 2002, and she stated she was unable to speak, had swollen hands, low back pain, and fatigue. (Id. at Clm. 145.) She has never been hospitalized for any of these conditions. (Id. at Clm. 146.)

g. On April 9, 2003, Ms. Dillingham spoke to plaintiff by telephone. In this conversation, plaintiff said she had asked her employer to be allowed to return to part-time work. (Id. at Clm. 64.)

h. On April 21, 2003, Dr. Moeser stated on one of defendant's Physician's Statement forms that he diagnosed plaintiff with Sjogren's Syndrome and fibromyalgia, with arthritis. He noted symptoms of dry eyes, dry mouth, polyarthritis, cognitive dysfunction, difficulty speaking, and memory impairment. As "objective findings" he listed: "LAB--ANA 1:640" and "X-RAY--periarticular osteopenia, capsular soft tissue swelling." He described his treatment plans as including "steroids, NSAID, possible immunosuppression." He described her "physical limitations" as "drops even light objects" and "limited walking/standing." He stated that plaintiff had "mental or nervous limitations" of "memory loss" and "difficulty speaking." His prognosis was "Guarded. Currently worse. Hopefully return to work in one year." (Id. at Clm. 69-70.)

i. On March 20 and April 28, 2003, plaintiff was seen by Terry L. Moore, M.D., Director of the Division of Rheumatology of Saint Louis University Hospital, and by Farhat Shereen, M.D., a subspecialty resident. Their letter report to Dr. Kurt Piening, dated April 28, 2003, recounts their examinations of her. The laboratory test results were largely normal and plaintiff's physical examination showed no

evidence of synovitis, muscle weakness, tenderness or atrophy. Her general examination was unremarkable, except that she demonstrated tenderness at all the fibromyalgia trigger points. (Id. at Clm. 81.)

       j.   On June 3, 2003, Nurse Case Manager N. Alexandrowicz, RN, recounted the medical evidence of record and reported that "there is no information to support a condition which would result in an impairment in function as it relates to a primarily seated position . . . ." (Id. at Clm. 65.)

       k.   On June 3 and 10, 2003, Dillingham discussed this finding with the Nurse Case Manager, and found that the medical information did not support a finding that plaintiff could not perform her job functions. (Id. at Clm. 58-59, 65.)

   8.   On June 17, 2003, Ms. Dillingham sent plaintiff a letter denying the claim and closed the claim file. (Id. at Clm. 58.) The letter denying the claim noted that the records that defendant considered were those of Dr. Moore, dated March 20 to April 28, 2003; Dr. Moeser, dated August 27, 2002 to April 8, 2003; and medical test records from Quest Diagnostics, St. Louis University Hospital, and BJC Health Systems. Ms. Dillingham recounted plaintiff's complaints, which were cognitive problems that caused her to scramble words when speaking (resulting in her being unable to speak for long periods of time), swelling and pain in her hands, pain in her lower back, pain in her wrists and shoulders, fatigue, dry throat, and dry eyes. (Id. at 72.) Ms. Dillingham recounted Dr. Moore's opinions and those of Dr. Moeser:

> Dr. Moore indicated he did not find evidence of rheumatoid arthritis. He noted your symptoms are more consistent with possible fibromyalgia syndrome. He recommended you continue on the same anti-inflammatory drugs and take part in regular aerobic activity. Dr. Moore did not indicate any restrictions or limitation. The claim form-physician's statement was returned blank.
>
> Dr. Moeser's records noted negative Tinel's and Phalen's signs and physical exams were essentially within normal limits. Records indicated you suffered from a hypoactive thyroid condition and were taking medication for this condition. No restrictions or limitations were noted.

(Id.) The written decision letter paraphrased Dr. Moeser's notes of October 22 and November 20, 2002; December 19, 2002; and April 8, 2003.

-9-

Regarding the April 8 progress notes, she stated, "Dr. Moeser notes that you have made attempts to go back to work, but you have had either a flare of the pain or a problem with cognitive function. He noted that cognitive function included short term memory loss and sentences not making sense." (Id.) Ms. Dillingham then recounted the telephone conversations she had with plaintiff on April 7, April 9 (twice), April 21, May 20, June 2, and June 3 (twice) and summarily stated that in these conversations "you" (plaintiff) spoke clearly, understandably, and without apparent difficulty. She concluded,

> Your job as a Customer Service Representative is seated work with the option to change positions as needed for comfort. Use of a headset and a computer is required. The amount of keystrokes is based on call volume. No lifting, climbing, or stooping is required.
>
> The above information does not support that you are continuously unable to perform the Material and Substantial Duties of Your Regular Occupation. Therefore, we are unable to honor your claim for benefits.

(Id. at 73.)

9. By telefax of July 7, 2003, plaintiff filed an administrative appeal with defendant. (Id. at Clm. 49.)

10. By report dated September 5, 2003, Anne MacGuire, M.D., a Fellow of the American College of Rheumatology, reviewed the file for defendant. In her report, she described plaintiff's job thus:

> The job of a Customer Service Representative requires sitting, using a personal computer and typing up to 1400 keystrokes per hour with moderate repetition of the upper extremities, while performing data entry in an ergonomically correct environment.
>
> The individual must be able to work with reasonable office equipment on a regular basis. This includes handling reams of paper and changing them in a copy machine.

(Id. at Clm. 16.) In her review of the medical record, and nowhere else in her report, Dr. MacGuire made only two comments about the issue of plaintiff's cognitive functioning:

> By 1-23-03, the claimant was complaining of cognitive dysfunction with muscle pain.

(Id. at Clm. 16.) And

> On a 4-21-03 record, the patient's physician documented her
> disability, which included memory loss and difficulty
> speaking.

(Id. at Clm. 17.)  After reviewing the medical record, Dr. MacGuire gave her assessment:

> The records demonstrate only subjective complaints described
> by the patient.  There are x-rays demonstrating periarticular
> osteoporosis, but these are nonspecific findings and, in the
> absence of progressive changes and without confirming
> physical exam and/or serologic findings, do not demonstrate
> evidence of disease process. Several very competent
> rheumatologists have seen this patient and there has been no
> evidence of specific, objective disease process documented
> other than depression and fibromyalgia.  The patient has a
> sicca complex.  The studies for Sjogren's syndrome were
> negative on multiple cases; the patient has no history of
> dental loss, and no history of ocular involvement that would
> require puncta occlusion or extensive complicated visits to
> the ophthalmologist.
>
> There is no evidence that this patient does not retain the
> functional abilities for her specific job demands.  These job
> demands require only sitting, computer work, fine motor and
> hand coordination and the ability to get up and down at one's
> own pace.  There is no evidence in the records that this
> patient does not continue to retain these functional activity
> levels.

(Id. at Clm. 17.)

    11.  After receiving the report of Dr. MacGuire, defendant's appeals committee, in a letter dated September 15, 2003, denied plaintiff's claim, stating in part,

> We are not disputing that you have fibromyalgia or sjogren's
> syndrome.  However, the medical information does not support
> a continuous functional impairment that would preclude you
> from performing your occupation throughout the 180-day
> elimination period.  While we understand that you continue
> to require treatment for your conditions, treatment, in
> itself, is not considered disabling.  We further relied on
> he expertises (sic) of the Medical Consultant who concluded
> that you were capable of performing your occupation.

(Id. at Clm. 25.)

### C.  Discussion

As stated above, this court must use the deferential abuse of discretion standard when reviewing the plan's decision in this case to determine whether summary judgment is appropriate.

> The proper inquiry under the deferential standard is whether "the plan administrator's decision was reasonable; i.e. supported by substantial evidence." [Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir. 1996).] While the word "reasonable" possesses numerous connotations, this Court has rejected any such definition that would "permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees[.]" Id. (quoting Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 572 (8th Cir. 1992)). The Committee's decision will be deemed reasonable if "a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." Id. If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made. See id.
>
> In determining whether a committee's interpretation of a plan is reasonable, this circuit utilizes the five-factor test outlined in Finley v. Special Agents Mut. Benefit Ass'n, 957 F.2d 617 (8th Cir.1992). . . . These factors are: 1) whether the Committee's interpretation is consistent with the goals of the Plan; 2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; 3) whether the Committee's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; 4) whether the Committee has interpreted the relevant terms consistently; and 5) whether the interpretation is contrary to the clear language of the Plan. . . . District courts should apply all five factors, or explain why a particular factor is inapplicable. [Lickteig v. Business Men's Assurance Co. of Am., 61 F.3d 579, 584 (8th Cir. 1995).]
>
> In making its evaluation, the court does not substitute its own weighing of evidence for that of the Committee. See Bolling v. Eli Lilly & Co., 990 F.2d 1028, 1029 (8th Cir. 1993).

Cash, 107 F.3d at 641. See also, King, 414 F.3d at 999.

The first four of the Finley factors militate in favor of affirming the decision not to award benefits. Defendant argues that it should be awarded summary judgment because its decision to deny plaintiff benefits was reasonable and not an abuse of discretion. Specifically, defendant argues that plaintiff was not disabled under the plan. Nothing in the record indicates that the defendant's decision was not consistent with the goals of the plan; nothing indicates that the decision was made to wrongly conserve plan funds at the expense of a claimant who should receive benefits. The decision did not render any language of the plan

-12-

meaningless or any provisions internally inconsistent. The decision to deny benefits has not been shown to violate ERISA. And no record of inconsistent applications of the plan language has been shown.

At issue in the case, and of cardinal importance, is whether the decision is contrary to the clear language of the plan. The policy at issue defined "disability" for purposes of long term disability benefits as a condition in which

> *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1. continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and
>
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training, or experience.

(Doc. 56 Ex. B at Pol. 16.)

Plaintiff argues that the defendant's decision, as it regards her mental and cognitive condition, is not supported by substantial evidence on the record as a whole. The undersigned agrees. The record demonstrates that defendant ignored the objective evidence in the form of clinical observations of her cognitive impairments. Not only is the description of plaintiff's job duties, relied upon by the defendant, deficient in that it fails to describe the cognitive communication skills that the record implies was part of plaintiff's job, but the defendant and its reviewing consultant failed to demonstrate a meaningful consideration of this component of plaintiff's job and the reports of plaintiff's cognitive limitations.[5]

Regarding plaintiff's cognitive limitations, defendant relied upon the non-expert opinion of Ms. Dillingham that her telephone conversations with plaintiff indicated an ability to speak clearly and with understanding. Such consideration does not consider the actual duties of plaintiff's job in the employment context. The record indicates that those discussions were of short duration and did not

---

[5]Dr. Moeser reported that plaintiff had trouble speaking and making sense, as well as suffering from short term memory loss. (Id. at Clm. 102-03.)

involve the kind of subject matter that plaintiff met on the job. Rather, they dealt with the difficulties plaintiff perceived in the processing of her application for disability benefits. Giving credence to Ms. Dillingham's written reports of these conversations, her opinion that these conversations demonstrated plaintiff's cognitive ability to perform her work is entirely beyond her expertise as a claims processor.

For these reasons, the court concludes that defendant's denial of plaintiff's application is contrary to the definition of disability in the plan. The appropriate remedy for plaintiff is remand to the defendant for proper reconsideration of her application under the plan. King, 414 F.3d at 1005-06; Abram v. Cargil, Inc., 395 F.3d 882, 887 (8th Cir. 2005); Zenone v. Alltel Corp., 2006 WL 686337 at *4 (E.D. Ar. 2006). On remand, defendant shall determine and consider the cognitive and mental requirements of plaintiff's employment position. Against this standard, defendant shall obtain an appropriate consultative mental evaluation, by an appropriate psychiatric or psychological expert, of plaintiff's mental and cognitive ability to perform the duties of her employment position. On remand, with this enhanced record, defendant shall consider whether plaintiff's cognitive condition, as affected by her physical condition, as evidenced by the entire record, including her perceptions of her physical and mental conditions, renders her disabled under the terms of the plan. On remand, defendant shall not consider the telephone interview reports of Ms. Dillingham's telephone conversations with plaintiff.

An appropriate order is issued herewith.

_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 31, 2006.